## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAMES KLEINERT,

    Plaintiff,

    v.

                                Civil Action No. 14-1506 (JDB)

BUREAU OF LAND MANAGEMENT,

    Defendant.

## MEMORANDUM OPINION

James Kleinert, a documentary filmmaker who felt that the Bureau of Land Management was unfairly impeding his work, filed a Freedom of Information Act request for all of the agency's records that referred to him. After waiting more than a year without receiving any records, Kleinert filed this suit to compel BLM to turn them over. BLM has now produced roughly 200 pages of records, many of them partially redacted. With opposing views on both the adequacy of BLM's search and the propriety of many of the redactions, the parties have cross-moved for summary judgment. BLM's current evidence mostly fails to demonstrate that its search was adequate or its redactions justified—but the agency may yet be able to make a convincing case that it complied with FOIA. Hence, the Court will largely deny both parties' motions.

## BACKGROUND

Kleinert is a documentary filmmaker whose work has focused on American wild horses. This vocation has brought Kleinert into repeated contact with BLM, which manages public lands where wild horses live and administers the Wild Free-Roaming Horses and Burros Act of 1971. Kleinert and the agency have not had an entirely cordial relationship: Kleinert has sharply criticized BLM's treatment of wild horses, and the agency has suspected Kleinert of unauthorized

filming on BLM lands.  In recent years Kleinert has come to believe that "BLM has been targeting [his] filming of wild horses on the public lands . . . by seeking to restrict [his] access to film at locations that would depict these issues."  Kleinert Decl. [ECF No. 15-2] ¶ 8.  This targeting, he suggests, "is related to the agency's opposition to, and disagreement with, the content of [his] films, and [his] advocacy as to these issues," and is aimed at limiting his "ability to facilitate public oversight of the agency's actions."  Id.

Prompted by these concerns, Kleinert filed a FOIA request in June 2013 seeking any BLM records that referred to him or his production company.  See Ex. 1 to Def.'s Mot. for Summ. J. [ECF No. 10-1] at 2.  Several months later, he filed an amended request that sought, in relevant part:

1. Any and all records, photographs, videos, correspondence, internal documentation, etc. that refer to or reference James Kleinert or Moving Cloud Productions from January 1, 2007, to present, including but not limited to:

   a. Any investigations or surveillance conducted by any Bureau of Land Management or Department of Interior employee, including Rod Shilaikis;

   b. Any reference to any public screenings of videos by James Kleinart [sic] or Moving Cloud Productions;

   c. Any reference to the Jicarilla Wild Horse Management EA, New Mexico, including an[y] internal discussions or references to the comment letter submitted by James Kleinert in response to BLM's Scoping Letter.

Ex. H to Blome Supp. Decl. [ECF No. 26-1] at 6.[1]  BLM acknowledged receipt of this amended request on September 16, 2013.  See id. at 5.

When nearly a full year passed without the delivery of any records, Kleinert filed this suit to compel BLM to respond to his request.  See Compl. [ECF No. 1].  It seems, though, that BLM

---

[1] Kleinert's amended request listed several additional categories of records, but Kleinert "is not raising any issues or objections pertaining to BLM's response" to any of those.  Pl.'s Reply & Resp. to Def.'s Renewed Mot. [ECF No. 24] at 5 n.2.

had sent Kleinert a compilation of responsive records in January 2014, but—for reasons unknown—they never showed up in Kleinert's mail.  See Witt Decl. [ECF No. 10-2] ¶¶ 4–6; Kleinert Decl. ¶¶ 3–4.  Once BLM received notice of this suit, it re-sent the 168 pages of responsive records it had found.  See Witt Decl. ¶ 6.  The agency partially redacted many of these records, relying on three FOIA exemptions.  In a handful of instances BLM redacted material that it said would reveal predecision deliberations, and so was protected from disclosure under Exemption 5. But for most of the redactions, the agency cited both Exemption 6—which covers private information in personnel, medical, and similar files—and Exemption 7(C)—which covers private information in law-enforcement files.  After turning over the redacted responsive records, BLM moved for summary judgment.  See Def.'s Mot. for Summ. J. [ECF No. 10] ("Def.'s Mot.").

Kleinert cross-moved for summary judgment, arguing that many of the redactions were unjustified, and also that BLM had not conducted an adequate search of its records.  See Pl.'s Mot. for Summ. J. [ECF No. 15] ("Pl.'s Mot.").  Kleinert's motion prompted BLM to take another look—which revealed that the agency had indeed failed to provide a number of responsive records. See Witt Supp. Decl. [ECF No. 20-1] ¶¶ 6–7.  BLM turned over these additional records and then filed a renewed motion for summary judgment.  Def.'s Renewed Mot. for Summ. J. [ECF No. 20] ("Def.'s Renewed Mot.").  But Kleinert contends that BLM has still not demonstrated the adequacy of its search or the propriety of many redactions, including some in the newly released materials. See Pl.'s Reply & Resp. to Def.'s Renewed Mot. [ECF No. 24] ("Pl.'s Reply").

## LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  And summary judgment is appropriate when the pleadings and evidence demonstrate "that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

It is the agency's burden to prove that it has complied with its obligations under FOIA. See U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n. 3 (1989).  To determine whether an agency has carried its burden, the district court may rely on agency affidavits, declarations, or Vaughn indexes that demonstrate the adequacy of the search for responsive records and the applicability of any claimed exemptions.  See Morley v. CIA, 508 F.3d 1108, 1116 (D.C. Cir. 2007); Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  When weighing this and other evidence in the record, the Court will review de novo the agency's determination that information requested through FOIA is subject to one of that statute's exemptions.  See 5 U.S.C. § 552(a)(4)(B).  And "[a]t all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'"  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

## DISCUSSION

The parties' motions present two distinct questions: whether BLM conducted an adequate search for responsive records, and whether BLM has adequately justified the redactions that Kleinert challenges.  For the most part, the answer to both questions is that the Court cannot tell. BLM appears to have forgotten that "[s]pecificity is the defining requirement of the Vaughn index and affidavit," King v. U.S. Dep't of Justice, 830 F.2d 210, 219 (D.C. Cir. 1987), instead providing an index and declarations that are so vague and conclusory that—a few exceptions aside—the Court cannot yet be sure that the agency has complied with FOIA.[2]

---

[2] A third issue can be quickly dispensed with.  BLM originally argued that it was entitled to summary judgment because Kleinert had failed to exhaust his administrative remedies.  See Def.'s Mot. at 6–7.  But BLM has not repeated that argument in its renewed motion, nor did it raise it at the motions hearing.  The agency presumably

## I.   ADEQUACY OF THE SEARCH

Kleinert's first major argument is that BLM failed to conduct a thorough search for records responsive to his request.  See Pl.'s Mot. 7–11; Pl.'s Reply at 3–12.  Under FOIA, an agency must "demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents."  Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 514 (D.C. Cir. 2011) (internal quotation marks omitted).  "In adjudicating the adequacy of the agency's identification and retrieval efforts, the trial court may be warranted in relying upon agency affidavits," provided they are "relatively detailed," "nonconclusory," and "submitted in good faith."  Morley, 508 F.3d at 1116 (internal quotation marks and brackets omitted).  And even if they are, "the requester may nonetheless produce countervailing evidence, and if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order."  Id. (internal quotation marks omitted).

Summary judgment is not in order here.  To start, BLM's key search term looks faulty.  According to BLM, it searched various locations for records referring to, among other terms, "James Kleinart."  Witt Supp. Decl. ¶¶ 4–5.  But plaintiff's name is James Kleinert.  In fairness to BLM, Kleinert himself misspelled his name in his initial FOIA request.  But his amended request repeatedly used the correct spelling (though it still used the incorrect spelling once).  If BLM nonetheless conducted its search using only the wrong spelling, the search was inadequate.  See Int'l Counsel Bureau v. U.S. Dep't of Def., 864 F. Supp. 2d 101, 107–09 (D.D.C. 2012) (requiring

recognizes that because Kleinert did not receive the agency's response within the relevant statutory period and before filing this suit (even if BLM did send it), Kleinert constructively exhausted his administrative remedies.  See, e.g., Jones v. U.S. Dep't of Justice, 576 F. Supp. 2d 64, 67 (D.D.C. 2008) ("[I]f Jones did not receive a response, then by operation of statute, he constructively exhausted his administrative requirements." (citing 5 U.S.C. § 552(a)(6)(C)(i))).

agency to use alternate spelling of detainee's name in search); cf. Negley v. FBI, 169 F. App'x 591, 595 (D.C. Cir. 2006) (denying summary judgment where agency may not have searched for precise file name).  At the hearing on these motions, counsel for BLM asserted that the agency had in fact used the proper spelling in conducting its search.  While the Court presumes that counsel is correct, this information must be presented in an affidavit from the relevant BLM employee.  See Morley, 508 F.3d at 1121 ("[A] post hoc explanation cannot make up for the fact that the [agency] provided an inadequate description of its search in its [affidavits].").

Even setting the spelling issue aside, BLM's description leaves the Court unsure of the search's reasonableness.  Kleinert's revised FOIA request first sought all materials that "reference James Kleinert or Moving Cloud Productions from January 1, 2007, to present," and then identified three nonexclusive categories ("including but not limited to") into which such materials might fall: (1) BLM investigations or surveillance; (2) public screenings of Kleinert's videos; and (3) the Jicarilla Wild Horse Management Environmental Assessment.  BLM's affidavit says that, with respect to investigations and surveillance, the agency searched for records in the Office of Law Enforcement and Security ("OLES") within the Washington Office.  See Witt Supp. Decl. ¶ 4.  It then says that with respect to "the remaining bulleted items of the plaintiff's request, a search was conducted [in various other offices] utilizing the search terms 'James Kleinart,' [and] 'Moving Cloud Productions,' as referenced in any documents for each bulleted item."  Id. ¶ 5.

The Court is somewhat perplexed by this description.  For starters, the reference to "bulleted items" suggests that BLM was working off Kleinert's original FOIA request (which put the nonexclusive categories in a bulleted list), rather than his amended request (which did not).  More importantly, though, the Court does not understand the manner in which BLM appears to have divided the search by subject matter and geography.  Did BLM search for investigation-

related records only in the Washington Office?  If so, why?  BLM's <u>Vaughn</u> index refers to a

"BLM Office of [L]aw Enforcement and Security (Idaho)."  <u>Vaughn</u> Index [ECF 10-2] at 3.  How

does that office relate to the OLES office in Washington, and what was it searched for?  And what

does it mean for BLM to have searched for Kleinert's name and production company "as

referenced in any documents for each bulleted item"?  One possibility: rather than searching for

<u>all</u> materials referencing Kleinert, BLM searched only for materials that referenced Kleinert and

<u>also</u> fit within the nonexclusive categories ("each bulleted item").  If so, BLM might have

overlooked responsive records.  In short, the agency's description raises more questions than it

answers.

       Confidence in BLM's search is further undermined by "the fact that the record itself reveals

positive indications of overlooked materials," <u>Valencia-Lucena v. U.S. Coast Guard</u>, 180 F.3d 321,

327 (D.C. Cir. 1999) (internal quotation marks omitted)—namely, several missing "attachments"

to a 41-page report summarizing a BLM investigation into whether Kleinert engaged in

unauthorized commercial filming in 2011.  As Kleinert notes, the investigation report refers to a

pair of declarations filed in another federal lawsuit between Kleinert and BLM.  <u>See</u> Pl.'s Mot. at

10–11; Pl.'s Reply at 11.  The investigation report describes these declarations as "attached," <u>see</u>

R9,[3] but BLM has neither produced them nor explained their absence.  So too with a 2007

"Categorical Exclusion document" related to a film permit issued to Kleinert, and a 2009 "Notice

of Trespass" sent to him.  <u>See</u> R8.  Both documents are described as "attached" to the investigation

report, both would seem to fit within Kleinert's FOIA request, and yet neither has been produced.

And even if these documents were not actually attached to the investigation report, why did BLM's

---

[3] The Court will use "R[#]" to refer to specific pages of BLM's initial production of responsive records.  <u>See</u>
Ex. 3 to Def's Mot. [ECF No. 10-3].

search not uncover them as standalone records that were responsive to Kleinert's request?  Perhaps there is a cogent explanation, but BLM has yet to provide it, leaving the Court in doubt about whether the agency has conducted a reasonable search.

In light of these questions regarding the reasonableness of BLM's search, summary judgment for the agency is not appropriate.  But nor is summary judgment for Kleinert.  It is possible that BLM in fact conducted an adequate search and has simply failed to describe it with sufficient detail and clarity.  The Court will therefore permit BLM to provide a supplemental description of its search to rectify these shortcomings.  If necessary, of course, BLM should conduct a supplemental search to fulfill its obligations under FOIA.[4]

## II.  THE REDACTIONS

BLM partially redacted many of the records it produced, citing FOIA Exemptions 5, 6, and 7(C).  Kleinert challenges a number of these redactions, which he says are not justified by the exemptions invoked.  See Pl.'s Mot. at 11–21; Pl.'s Reply at 12–17.  FOIA exemptions must be narrowly construed, and it is the agency's burden to show that they apply.  See John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989).  "The agency may carry that burden by submitting affidavits that describe the justifications for nondisclosure with reasonably specific detail,

---

[4] For the sake of informing BLM's future efforts, the Court notes that it is not persuaded by Kleinert's complaint that the agency's supplemental affidavit contains inadmissible hearsay and is not grounded in the personal knowledge of the affiant.  See Pl.'s Reply at 7–11.  The affidavit does contain two sentences averring that certain BLM employees vouched for the thoroughness of portions of the search—arguably hearsay.  See Witt Supp. Decl. ¶¶ 4–5.  But Kleinert can rest assured that the Court will not rely on such conclusory vouchers; it will make its own assessment of the adequacy of the search.  As for the question of personal knowledge, the affiant is BLM's FOIA Officer who oversaw and coordinated the search for records responsive to Kleinert's request.  See Witt Decl. ¶¶ 1–2; Witt Supp. Decl. ¶¶ 1–3.  Numerous cases hold that an agency official in such a position has the personal knowledge necessary to describe the search, even if he did not personally conduct it.  See, e.g., SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991); Willis v. U.S. Dep't of Justice, 581 F. Supp. 2d 57, 66 (D.D.C. 2008).  And Kleinert provides no authority for the proposition that a separate affidavit is necessary for each office within BLM.

demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (internal quotation marks omitted). BLM's submissions largely fall short of this standard. The Court can determine whether the claimed exemptions properly apply in a few instances. But for the most part, BLM has failed to convince the Court that the redactions are justified.[5]

### A. Exemption 5

Exemption 5 allows an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). "Exemption 5 [therefore] incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant—including . . . the deliberative-process privilege—and excludes these privileged documents from FOIA's reach." Loving v. Dep't of Def., 550 F.3d 32, 37 (D.C. Cir. 2008) (internal quotation marks omitted). The deliberative-process privilege, in turn, "protects agency documents that are both predecisional and deliberative," Judicial Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 151 (D.C. Cir. 2006); that is to say, documents that are "generated before the adoption of an agency policy" and that "reflect[ ] the give-and-take of the consultative process," Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). To successfully invoke this privilege under Exemption 5, the agency must establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process." Coastal States, 617 F.2d at 868.

---

[5] Kleinert's counsel conceded at the motions hearing that he is not seeking the disclosure of any email addresses. Therefore, notwithstanding any of the following analysis, BLM may continue to redact email addresses.

With respect to the Exemption 5 redactions that Kleinert challenges, BLM fails to show that its invocation of the deliberative process privilege is justified.  The introduction of the agency's <u>Vaughn</u> index says that Exemption 5 was invoked "for documents that involved [BLM's] proposed recommendations with regard to the investigation involving the potential failure to obtain special permit [sic]."  <u>Vaughn</u> Index [ECF No. 10-2] at 1–2.  This vague and general description, standing alone, is insufficient to justify the redactions.  BLM promises document-specific detail in the remainder of the <u>Vaughn</u> index, <u>see</u> Witt Decl. ¶ 9, but what follows is inadequate.  As for the redactions on R82 and R95, the index provides <u>no</u> explanation—it merely says that "[Exemption 5] material was segregated and withheld."  <u>Vaughn</u> Index at 5.[6]  The index is similarly opaque about the redaction on R139, noting simply that the document was a draft and that material was withheld under the deliberative process privilege.  <u>See id.</u> at 6.  The agency gives slightly more explanation regarding the redactions on R159 and R165: "The [Exemption 5] information relates to communications between the U.S. Department of the Interior and the U.S. Department of Justice regarding public access and viewing of horse round ups."  <u>Id.</u> at 7.  But this description only identifies a very general subject matter.  Hence, it is still insufficient.  "[T]o approve exemption of a document as predecisional, a court must be able to pinpoint an agency decision or policy to which the document contributed."  <u>Hinckley v. United States</u>, 140 F.3d 277, 284 (D.C. Cir. 1998) (internal quotation marks omitted).  The Court cannot do so here.  Nor can it tell whether the redacted material is truly "deliberative."  BLM's submissions do not, for instance, convince the Court that the redacted materials "reflect the personal opinions of the writer rather than the policy of the agency."  <u>Coastal States</u>, 617 F.2d at 866.

---

[6] BLM's Renewed Motion attempts to supplement this non-explanation, <u>see</u> Def.'s Renewed Mot. at 14, but the Court must rely on what BLM has said in its affidavits and <u>Vaughn</u> index, not what it says (through counsel) in its motion papers, <u>see</u> <u>Morley v. CIA</u>, 508 F.3d 1108, 1120 (D.C. Cir. 2007).

At the motions hearing, BLM's counsel all but conceded that the agency's affidavits and Vaughn index said nothing to justify these applications of Exemption 5.  She suggested, however, that one might be able to infer from the nature of the documents themselves that the deliberative process privilege applies.  But given the extent of the agency's redactions, that is simply impossible.  In most instances, the Court can infer little more than that the redacted documents are emails.  From whom, to whom, about what—that the Court cannot tell, and should not be forced to guess.

BLM's meager explanation of its application of Exemption 5 precludes the Court from granting it summary judgment.  But, here again, the Court is not prepared to grant summary judgment to Kleinert either.  Instead, the Court will require BLM to provide a supplemental affidavit or Vaughn index that explains—in detail, and on a document-by-document basis—why Exemption 5 applies.  See, e.g., STS Energy Partners LP v. FERC, 82 F. Supp. 3d 323, 334–336 (D.D.C. 2015) (requiring agency "to provide more—and more specific—information regarding its decision to withhold . . . documents under Exemption 5").

## B.  Exemptions 6 and 7(C)

For most of the redactions in the responsive records, BLM invoked both Exemption 6 and Exemption 7(C).  Exemption 6 permits an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  Exemption 7(C) in turn covers "records or information compiled for law enforcement purposes" whose production "could reasonably be expected to constitute an unwarranted invasion of personal privacy."   Id. § 552(b)(7)(C).  "[B]ecause Exemption 7(C) permits withholding of . . . records if disclosure would constitute an 'unwarranted' invasion of personal privacy, while Exemption 6 requires a 'clearly unwarranted' invasion to justify

nondisclosure, Exemption 7(C) is more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material."  ACLU v. U.S. Dep't of Justice, 655 F.3d 1, 6 (D.C. Cir. 2011) (internal quotation marks omitted).  For this reason, when an agency cites both exemptions to justify a set of redactions, courts often first analyze those redactions under Exemption 7(C), turning to Exemption 6 only if necessary.  See, e.g., Roth v. U.S. Dep't of Justice, 642 F.3d 1161, 1173 (D.C. Cir. 2011).  The Court will follow that course here—although it turns out that Exemption 7(C) does not take us very far.

### C.  Exemption 7(C)

Evaluating the applicability of Exemption 7(C) entails two steps.  A court must first determine whether the agency has demonstrated that the records were "compiled for law enforcement purposes."  This inquiry focuses on "how and under what circumstances the requested files were compiled and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding."  Jefferson v. Dep't of Justice, Office of Prof'l Responsibility, 284 F.3d 172, 176–77 (D.C. Cir. 2002) (internal quotation marks and citation omitted).  The "law" to be enforced need not be criminal; files relating to civil or administrative enforcement proceedings can also fall under Exemption 7(C).  See id. at 178.  If the records meet this first requirement, the court must go on to balance the privacy interests protected by withholding the information against the public interest in its disclosure.  See Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 171 (2004).

BLM's reliance on Exemption 7(C) for the most part falters at the first step because BLM has not convinced the Court that the bulk of the redacted records were "compiled for law enforcement purposes."  See Pls.' Mot. at 12 n.4 (contesting BLM's classification).  The agency's affidavits state simply that "the responsive records were compiled for law enforcement purposes

in connection with the BLM's concern that [Kleinert] may have violated 43 C.F.R. § 2932.57(a)(1)." Witt Decl. ¶ 11; Witt Supp. Decl. ¶ 9.  BLM's <u>Vaughn</u> index provides only slightly more detail: "Exemption 7(C) was asserted because the responsive records were obtained through the BLM's investigation of Mr. James Kleinert's possible violation of 43 C.F.R. § 2932.57(a)(1) involving the failure to obtain a special permit and pay required fees in connection with his commercial filming on BLM lands in Colorado."  <u>Vaughn</u> Index at 2.

These assertions that all of the responsive records were compiled for law enforcement purposes are insufficient for several reasons.  To start, BLM's description of its search suggests that the only responsive record located in the Office of Law Enforcement and Security—"the office responsible for BLM investigations"—was the 41-page investigation report.  <u>See</u> Witt Supp. Decl. ¶ 4.  The other records, it seems, were located in other offices, which casts doubt on the assertion that they were compiled in connection with an investigation.  Moreover, many of the responsive records predate by several years the subject of the investigation report: the allegedly unauthorized filming in 2011.  One set of heavily redacted records, for example, comprises 36 pages of emails from August 2007 through April 2008.  <u>See</u> <u>Vaughn</u> Index at 5.  Some of these emails do make reference to another instance of allegedly unauthorized filming, <u>see, e.g.</u>, R82–R84, but BLM has not shown that these "relate to anything that can fairly be characterized as an enforcement proceeding," <u>Jefferson</u>, 284 F.3d at 177 (internal quotation marks omitted), or that the agency even investigated these earlier incidents.  And many of the other emails (and other records generally) appear to have nothing to do with unauthorized filming or any investigation into such filming.  Nor, so far as the Court can tell, does the investigation report refer to or incorporate the other responsive records.  <u>Cf.</u> <u>John Doe Agency</u>, 493 U.S. at 155 (holding that records originally

assembled for other purposes can come within Exemption 7 if subsequently compiled for law enforcement purposes).

Among the redacted records Kleinert has challenged, the Court can at present identify with confidence only one that was compiled for law enforcement purposes: the 41-page investigation report.  For all other disputed records, BLM has not yet met its burden with respect to this first step.  If BLM wishes to continue to rely on Exemption 7(C) to justify the redactions in those records, it must provide further—and significantly more detailed—explanation about their relationship to law enforcement efforts.  For now, the Court will move on to the second step of the Exemption 7(C) analysis only for the challenged redactions in the investigation report.

To determine whether disclosure of the redacted material in the investigation report "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), the Court must "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information," Roth, 642 F.3d at 1174 (internal quotation marks omitted).  "The only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice, 746 F.3d 1082, 1093 (D.C. Cir. 2014) (internal quotation marks and brackets omitted).

Kleinert first challenges several redactions in the portions of the investigation report that describe the 2007 Categorical Exclusion document and the 2009 Notice of Trespass.  See Pl.'s Mot. at 13–14; Pl.'s Reply at 14–15.  These redactions obscure the names and job titles of the

BLM officials who signed these two documents.[7]   BLM defends the redactions on the ground that "the mere fact that the individuals were mentioned in a law enforcement record implicates a significant privacy interest."  Def.'s Renewed Mot. at 9 (citing ACLU, 655 F.3d at 8).  The Court acknowledges that there is precedent that might seem to support this view.  The D.C. Circuit has, after all, "consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants."  Schrecker v. U.S. Dep't of Justice, 349 F.3d 657, 661 (D.C. Cir. 2003).

But the Court is nonetheless unpersuaded that there is a significant privacy interest here. The reason for generally protecting names in law enforcement records is the risk of harassment, embarrassment, and reputational damage.  See, e.g., id. at 666 ("mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation" (internal quotation marks omitted));  Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1491 (D.C. Cir. 1984) (noting "risk of harassment and annoyance" for investigators and informants).  It is easy to see why those dangers often exist for "investigators, suspects, witnesses, and informants," Schrecker, 349 F.3d at 661, especially (though not exclusively) in the context of criminal investigations.  But the individuals whose names and titles have been redacted here fit none of those categories.   They are BLM employees who signed non-confidential official documents that happened to be reviewed and summarized years later by investigators examining tangentially related events.  The risk of harassment, embarrassment, or reputational damage here— if not absent entirely—seems about as close to nil as it could get.  And BLM has said nothing specific about these particular employees or documents to suggest otherwise.  See United Am.

---

[7] As noted earlier, BLM has inexplicably failed to produce the two documents themselves.  The discussion here concerns only the investigation report's description of these documents.  See R8; Ex. J to Pl.'s Reply [ECF No. 24-2] (pages 35–37 of the investigation report).

<u>Fin., Inc. v. Potter</u>, 667 F. Supp. 2d 49, 60 (D.D.C. 2009) (rejecting declarations with "no factual proffer" as "far too conclusory to support a finding that these [government] employees have a privacy interest" under Exemption 7(C)); <u>Stonehill v. IRS</u>, 534 F. Supp. 2d 1, 12 (D.D.C. 2008) ("In short, the government offers no explanation as to <u>why</u> disclosure of this particular agent's name would cause embarrassment, undue harassment, etc."), <u>aff'd</u>, 558 F.3d 534 (D.C. Cir. 2009).

Given that the privacy interests here are truly <u>de minimis</u>, the balancing favors disclosure. Kleinert has articulated a significant public interest behind his FOIA request: determining whether BLM is unfairly restricting his ability to film on public lands because of his views.  This inquiry of course has special significance for Kleinert, but the public generally has an interest in learning if an agency is retaliating against its media critics.  Much less clear, though, is the "nexus" between Kleinert's larger inquiry and these specific redactions.  <u>See</u> <u>Favish</u>, 541 U.S. at 172–73.  Will disclosing these employees' identities shed light on whether the agency has misbehaved?  Maybe not.  But the Court is mindful that it does not know the whole story of Kleinert's relationship with BLM.  Because there is some chance this information will meaningfully further the public interest, and the privacy interests are next to none, the Court will require BLM to disclose this information. There is no real risk here of an "unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(7)(C).

Kleinert next challenges the redaction of several names—all of private individuals, it appears—in the investigation report's summary of a pair of videos and its reproduction of an article about Kleinert.  <u>See</u> Pl.'s Mot. at 15; Pl.'s Reply at 14.  While these redactions might not seem terribly different from those just discussed, different rules apply to the identities of private individuals.  Indeed, the names of private individuals in law enforcement records are <u>categorically</u> exempt from disclosure except where necessary "to confirm or refute compelling evidence that the

agency is engaged in illegal activity." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1206 (D.C. Cir. 1991). There is no compelling evidence of illegal activity here, let alone reason to think that disclosing these individuals' names would confirm or refute such activity.

Read generously, Kleinert's objections to these redactions could also be interpreted as invoking the "public-domain doctrine," under which "materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." Cottone v. Reno, 193 F.3d 550, 554 (D.C. Cir. 1999). But a FOIA plaintiff invoking this doctrine bears the burden of showing that the withheld materials are in fact "preserved in a permanent public record." See Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1280 (D.C. Cir. 1992). Kleinert has not met that burden—especially the permanence requirement— with respect to the two videos and article.

Next, in what might seem a rather silly dispute, Kleinert challenges the redactions in the report that withhold "the name, address and contact information of [his] own attorney." Pl.'s Mot. at 14; see also Pl.'s Reply at 13. But that attorney—who is not Kleinert's counsel in this litigation—is a private individual, so his or her identity falls within the categorical rule against disclosure just discussed. See SafeCard, 926 F.2d at 1206; see also Harrison v. Executive Office for U.S. Attorneys, 377 F. Supp. 2d 141, 148 (D.D.C. 2005) (applying SafeCard to attorneys' identities). Kleinert cites no authority suggesting that a different rule applies when the private individual was once the FOIA requester's own lawyer. Once again, then, the absence of compelling evidence of illegal agency activity means that the redactions are justified. And the fact that Kleinert can deduce what lies behind the redactions does not eliminate the privacy interest at stake. See, e.g., Thomas v. U.S. Dep't of Justice, 531 F. Supp. 2d 102, 109 (D.D.C. 2008) ("Third parties' privacy interests are not lost because a requester knows or can determine from a redacted

record their identities.").  (Kleinert of course remains perfectly free to reveal the identity of his lawyer to anyone who cares to listen.)

Finally, Kleinert challenges the redactions in the report that conceal some of the contents of two declarations—described earlier, see supra p. 7—filed in another federal lawsuit related to Kleinert's 2011 filming.  See Pl.'s Mot. at 14.  Kleinert's objection to these redactions is best read as invoking the public-domain doctrine discussed earlier—but this time it has force.  Kleinert correctly points out that the underlying declarations are publicly available court filings, and he identifies the relevant court and case number.  And the declarations disclose all of the information that BLM has redacted from the investigation report.  Kleinert has thus shown that "the specific information sought [has] already been disclosed and preserved in a permanent public record." Students Against Genocide v. Dep't of State, 257 F.3d 828, 836 (D.C. Cir. 2001) (internal quotation marks omitted).  BLM, by contrast, has offered no explanation as to why these redactions are justified despite the ready public availability of the underlying declarations.  The Court therefore concludes that these redactions are unjustified.

In sum, the Court holds that two sets of redactions in the investigation report are unjustified under Exemption 7(C): those that relate to the declarations just described, and those in the summaries of the Categorical Exclusion document and Notice of Trespass.  Exemption 7(C) justifies the other redactions in the report.  The Court therefore need not examine these redactions through the lens of Exemption 6.  It will, however, determine whether Exemption 6 justifies the challenged redactions in other documents.

**D.  Exemption 6**

Exemption 6 permits an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5

U.S.C. § 552(b)(6).  As with Exemption 7(C), the evaluation of redactions under Exemption 6 proceeds in two steps.  A court must first determine whether the records qualify as "personnel," "medical," or "similar files."  These terms have been read broadly, so this threshold requirement is easily met: any "information which applies to a particular individual" qualifies.  U. S. Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982); see also Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002).  But the remainder of the analysis is more demanding. A court must "determine whether disclosure would compromise a substantial, as opposed to a de minimis, privacy interest.  If a substantial privacy interest is at stake, then the court must balance the individual's right of privacy against the public interest in disclosure."  Prison Legal News v. Samuels, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (internal quotation marks and citations omitted). As is true under Exemption 7(C), the public interest must involve shedding light on government behavior.  See id.  Exemption 6's scales, however, tip more readily toward disclosure, for the invasion of personal privacy must be "clearly unwarranted."  "[I]ndeed, under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the Act."  Morley, 508 F.3d at 1127 (internal quotation marks omitted).

BLM has failed to carry its burden of showing that Exemption 6 applies to the redactions Kleinert has challenged.  The large majority of those redactions serve to obscure names and contact information, such as email addresses—some belonging to BLM employees, some to Kleinert's attorney, and some to other individuals.  Kleinert does not dispute that these records qualify as "similar files" under Exemption 6's threshold requirement, but contends that there are no privacy interests sufficient to justify withholding.  The Court is inclined to agree.

In making these redactions, BLM seems to have thought that releasing names or addresses (except those of the requester himself) is inherently "a clearly unwarranted invasion of personal

privacy" under Exemption 6.   Thus, the <u>Vaughn</u> index merely catalogs numerous redactions of names and addresses under Exemption 6 without any analysis.   But there is no such per se rule. "[T]he disclosure of names and addresses is not inherently and always a significant threat to the privacy of those listed; whether it is a significant or a <u>de minimis</u> threat depends upon the characteristic(s) revealed . . . and the consequences likely to ensue."   <u>Nat'l Ass'n of Retired Fed.</u> <u>Emps. v. Horner</u>, 879 F.2d 873, 877 (D.C. Cir. 1989); <u>see also</u>, <u>e.g</u>, <u>Prison Legal News</u>, 787 F.3d at 1147 ("Exemption 6 does not categorically exempt individuals' identities." (internal quotation marks omitted)).   The absence of such a per se rule is fatal to BLM's invocation of Exemption 6, for the agency has failed to explain with meaningful specificity why releasing the challenged information would significantly threaten anyone's privacy.

Examining several of the challenged redactions illustrates the point.   Take first a document entitled "Stipulations For Film Permit For James S. Kleinert," which identifies five BLM officials with responsibilities relevant to Kleinert's permit.   R60–R61.   BLM has redacted all of their names. The <u>Vaughn</u> index says only that "the withheld information . . . concerns the name and contact information of third parties" and was redacted "to protect the privacy of individuals."   <u>Vaughn</u> Index at 4.   But what privacy interest do these BLM official have in not being identified as the holders of these positions?   How would revealing that someone was the "local coordinator of media and filming personnel" invade that person's privacy?   R60.   The Court has similarly unanswered questions regarding a September 2007 email with the subject line "James Kleinart [sic] Wildhorse Filming Update."   R71.   BLM has redacted the sender's and recipients' names, as well as the names of two individuals discussed in the body of the message.   Unaided by any useful explanation from BLM, the Court cannot see why revealing these individuals' identities would meaningfully intrude on their privacy.   Consider finally a series of 2013 emails regarding a "Media Visit to Little

Book Cliffs Wild Horse Range." R132–R133. Among other redactions, the agency has hidden the name of an individual described by a BLM employee (whose name is also hidden) as "the main reporter for Energy and Environment that covers BLM." R132. How would revealing the reporter's name constitute an invasion of his privacy? BLM does not say. The inadequately justified redactions in these three records are fairly representative of all the Exemption 6 redactions that Kleinert challenges.

In its summary judgment briefing, BLM attempts to salvage these redactions by noting that "[i]ndividuals have a 'significant' privacy interest in the nondisclosure of personal information that would subject them to embarrassment, harassment, or retaliation." Def.'s Renewed Mot. at 11; see also Def.'s Mot. at 15. No doubt they do. The problem for BLM, however, is that it has wholly failed to explain why disclosure of the redacted information would subject the relevant individuals to any of these harms. BLM's affidavits and Vaughn index say nothing about embarrassment, harassment, or retaliation, and the Court will not accept the agency's conclusory, mid-litigation say-so. See, e.g., United Am. Fin., Inc. v. Potter, 531 F. Supp. 2d 29, 47 (D.D.C. 2008) (rejecting agency's invocation of Exemption 6 in light of its failure to "provide a factual basis for the conclusion that harassment or intimidation would result from disclosure of the names"); cf. Judicial Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 153 (D.C. Cir. 2006) (accepting agency's invocation of Exemption 6 in light of specific evidence of "the danger of abortion-related violence"). The Court might be more sympathetic to an argument premised on harassment if Kleinert wanted to reveal individuals' email addresses, but at the motions hearing Kleinert expressly disavowed seeking such information. And the Court will certainly not accept the suggestion that the remote possibility of harassment means that every disclosure of a name implicates a significant privacy interest.

BLM also argues that revealing the information it has redacted under Exemption 6 would not shed light on the agency's performance of its duties.  See Def.'s Mot. at 15–16.  Perhaps, but this argument puts the cart before the horse.  The strength or weakness of the public interest in disclosure only comes into play once the agency has shown that a substantial privacy interest is implicated.  See Prison Legal News, 787 F.3d at 1147 ("If a substantial privacy interest is at stake, then the court must balance the individual's right of privacy against the public interest in disclosure." (emphasis added) (internal quotation marks omitted)); see also Multi Ag Media LLC v. Dep't of Agric., 515 F.3d 1224, 1229 (D.C. Cir. 2008).  And this BLM has not done.  Moreover, removing the redactions likely would shed some light on the agency's performance of its duties.  BLM's categorical redaction of all its employees' names and email addresses, for example, obfuscates who sent what to whom, making it difficult to analyze the agency's behavior toward Kleinert, including its scope.

The Court once more finds itself unpersuaded by BLM's explanation of its withholdings but not fully convinced that all the material must be disclosed.  The challenged Exemption 6 redactions might in fact protect significant privacy interests that BLM has simply failed to spell out.  Since the Court is already giving BLM another opportunity to address the scope of the search and to explain whether the challenged records come within the ambit of Exemption 7(C), it will also allow BLM to offer a further defense of its use of Exemption 6—one that gives a non-conclusory account of the specific privacy interests allegedly at stake.  Cf. Am. Fin., 531 F. Supp. 2d at 46 ("Considering that further briefing is forthcoming on other withheld documents, the Court will give defendant another opportunity to justify withholding [certain information] under Exemption 7(C).").  To be clear, BLM is allowed to defend its use of Exemption 6 with respect to

entire categories of redactions, but it still must identify with precision the privacy interests that are threatened by disclosure.  See Prison Legal News, 787 F.3d at 1150.

## CONCLUSION

For the foregoing reasons, the Court will deny both parties' motions for summary judgment, except as they relate to the challenged redactions in the investigation report.  Kleinert's motion is granted with respect to the redactions in the investigation report that relate to the Categorical Exclusion document, the Notice of Trespass, and the declarations filed in Kleinert v. Salazar, Civil Action No. 11-2428 (D. Colo.).  BLM must release the relevant pages of the report without those redactions.  BLM's motion, in turn, is granted with respect to the other challenged redactions under Exemption 7(C) in the investigation report.  If BLM wishes to renew its motion for summary judgment, it must also provide a supplemental affidavit and Vaughn index that provide a clearer description of the agency's search; explain whether any of the challenged records other than the investigation report were compiled for purposes of law enforcement; and explain why Exemptions 5 and 6 justify the specific redactions Kleinert has challenged.  A separate Order has issued on this date.

_____/s/_____

JOHN D. BATES<br>
United States District Judge

Dated:  September 25, 2015