UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAMES KLEINERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CV 14-1506 (JDB) |
| BUREAU OF LAND MANAGEMENT, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Defendant Bureau of Land Management ("BLM"), U.S. Department of Interior, moves this Court pursuant to Fed. R. Civ. P. 56, to enter summary judgment in its favor as there are no genuine issues of material fact and summary judgment is appropriate as a matter of law.

The Court is respectfully referred to the attached memorandum, statement of undisputed facts, supporting declaration and exhibits.  A proposed order is also attached.

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar #415793
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar # 924092
Chief, Civil Division

By: _____/s/_____
CLAIRE WHITAKER, Bar # 354530
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2526
Claire.Whitaker@usdoj.gov

OF COUNSEL:

MARIA LURIE
Attorney-Advisor
Office of the Solicitor
U.S. Department of the Interior

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAMES KLEINERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CV 14-1506 (JDB) |
| BUREAU OF LAND MANAGEMENT, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Defendant Bureau of Land Management ("BLM"), United States Department of the Interior ("Defendant"), by and through undersigned counsel, respectively submits this Memorandum of Points and Authorities in Support of its Renewed Motion for Summary Judgment in this Freedom of Information Act ("FOIA") case. In support of this motion, the BLM provides the Second Supplemental Declaration of Ryan Witt, FOIA Officer for the BLM ("Second Supplemental Witt Decl.") and supporting Exhibits A - E.

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff, an operator of a film production company, submitted a FOIA request on June 20, 2013. The request sought records pertaining to himself and his film company (Moving Cloud Productions), and records involving BLM wild horse roundup actions in several BLM Management Areas. Exhibit A (FOIA Request, as modified on Oct. 30, 2013). Dissatisfied with the release, and having exhausted his administrative remedies, Plaintiff filed this civil action seeking review of the BLM's response. Thereafter, the parties filed cross motions for summary judgment, and the Court held oral argument on September 14, 2015. On September 25, 2015, the

Court entered a Memorandum Opinion and Order that granted the parties' cross motions, in part, and denied them, in part.

In light of the issues raised in the Court's decision and at the motions' hearing, the BLM has conducted a new search for responsive records, reprocessed the records, and, through this filing, is providing a supplemental release to Plaintiff. *See* Second Supplemental Witt Decl. The final release of records in response to Plaintiff's FOIA request (Exhibit A) may be summarized as follows:

> Exhibit B (a 168-page document, consisting of certain pages of a law enforcement investigative report (hereinafter, the "Law Enforcement Investigative Report"), as well as responsive records that were not compiled for law enforcement purposes);

> Exhibit C (a 41-page document containing additional pages from the aforementioned Law Enforcement Investigative Report);

> Exhibit D (declarations of James Kleinert and Valori Armstrong in connection with a 2011 lawsuit filed in the U.S. District Court for the District of Colorado); and

> Exhibit E (a trespass notice).[1]

In his Second Supplemental Declaration, Mr. Witt explains the BLM's search for records was conducted using the correct spelling of Plaintiff's name, and at all locations likely to have responsive records.  Mr. Witt also explains that no new records were located as result of the search conducted following the motions' hearing. He does, however, explain that certain records that the BLM had located prior to the new search but had previously failed to release due to

---

[1] The *Vaughn* index attached to the Ryan Witt Declaration of Feb. 20, 2015, provides details concerning the content of Exhibit B. As for the fact that one must look to both Exhibit B and Exhibit C for records from the Law Enforcement Investigative Report, this is because the BLM processed the records at different times. The grouping of the Law Enforcement Investigative Report records here is consistent with the pattern in which the groupings were previously released.  Exhibits D and E contain missing records, referenced in the Law Enforcement Investigative Report, that were previously located but not released until now.

internal transmission errors occurring within the BLM, are now provided to Plaintiff. Finally, Mr. Witt explains the determinations made when reprocessing the located records.

First, the BLM decided to limit the withholdings made to records not compiled for law enforcement purposes to Exemption 5 and FOIA Exemption 6.  FOIA Exemption 5 is asserted to protect certain information appearing on Pages 82, 159, 160 and 165 of Exhibit B, based on the attorney-client privilege. FOIA Exemption 6 is asserted to protect portions of Pages 91 and 92 of Exhibit B because the redacted information relates to a former employee's job performance and falls within the scope of Exemption 6. Secondly, FOIA Exemption 7(C) alone has been asserted to protect the names and identifying information of law enforcement officials appearing in the Law Enforcement Investigative Report.  The records constituting the Law Enforcement Investigative Report, which the BLM compiled for law enforcement purposes relating to an investigation into whether Plaintiff engaged in unauthorized commercial filming in 2011, appears at pages 1 - 58 of Exhibit B and pages 1-41 of Exhibit C. The redactions made to protect the personal information of law enforcement officials pursuant to Exemption 7(C) appear on pages 1- 2, 4, 9, 11, 13, and 15-17 of Exhibit B.  Redactions of the names law enforcement and identifying information of law enforcement officials pursuant to Exemption 7(C) also appear at pages 1- 2, 4-5, 7-8, and 15-35 of Exhibit C.

Apart from the redactions made pursuant to 7(C) to protect the personally identifying information of law enforcement officials, the BLM has also asserted Exemptions 6 and 7(C) to protect the names and personally identifying information of third parties mentioned in the Law Enforcement Investigative Report. Hence, the BLM has redacted the personal information third party individuals appearing on pages 2-16, 20-24, 30-36, and 53-57 of Exhibit B pursuant to Exemptions 6 and 7(C). Pursuant to these same two FOIA exemptions, the BLM has also

3

redacted personal information concerning third party individuals on pages 1-5, 7-9, 14-17, 22, 26-27, and 34-40 of Exhibit C.

Finally, to the extent the BLM previously cropped or obscured portions of six still photographs contained within the Law Enforcement Investigative Report under Exemptions 6 and 7(C), the BLM continues to assert those exemptions were properly applied. The BLM made such redactions to protect the privacy of individuals photographed at the Spring Creek Horse Management Area in San Miguel, Colorado, during a BLM gathering of wild horse in 2011, as specified in the previously submitted Supplemental *Vaughn* Index. The BLM released the six redacted still photographs to Plaintiff by letter of May 6, 2015.[2]

All other information has been segregated and released.  The BLM submits that it has released all non-exempt material, and that the Court has no further judicial function to perform under the FOIA. Accordingly, summary judgment should be entered in the BLM's favor.

## II.  STATEMENT OF FACTS

Defendant hereby incorporates the attached Statement of Material Facts Not in Genuine Dispute ("SMF"), and the Second Supplemental Witt Declaration and Exhibits A-E, thereto. Plaintiff's final, modified FOIA Request of October 30, 2013, sought the following records:

1.      Any and all records, photographs, videos, correspondence, internal documentation, etc., excluding documents derived from litigation in which James Kleinert or Moving Cloud Productions was a litigant, that refer to or reference James Kleinert or Moving Cloud Productions regarding Mr. Kleinart's [sic] filming in the Pryor Mountains in 2009 and of the Spring Creek, Colorado wild horse round up in September 2011, including but not limited to:

a)      Any investigations or surveillance conducted by any Bureau of Land Management or Department of the Interior employee, including Rod [sic] Shilaikis;

---

[2] There are also redactions made by undersigned counsel that are personal to Mr. Kleinert, such as his height, weight, hair and eye color, date of birth, and photograph that appear on his driver's license.  *See e.g.*, Ex. B at 58 and C at 41.  This information has been provided to him without redactions.

      b)      Any reference to any public screenings of videos by James Kleinart [sic] or Moving Cloud Productions;

      c)      Records of media attendance at either of these events;

      d)      Applications for filming permits, whether denied or issued, as well as corresponding documents indicating whether the permits were denied or issued for these events.

2.      An electronic list of the wellhead locations for all operational and closed oil and gas wellheads, the drilling of which was approved by the Bureau of Land Management for mining or fracking in the following Herd Management Areas:

      a)      West and East Douglas, Colorado

      b)      North Piceance, Colorado

      c)      Naturita Herd Ridge, Colorado

      d)      Spring Creek, Colorado

      e)      Disappointment Valley, Colorado

3.      Township and range information, along with a description of and instructions for using the BLM online website with oil and gas lease and permit data, for the following Herd Management Areas:

      a)      West and East Douglas, Colorado

      b)      North Piceance, Colorado

      c)      Naturita Herd Ridge, Colorado

      d)      Spring Creek, Colorado

      e)      Disappointment Valley, Colorado.

Second Supplemental Witt Decl. at ¶ 10; Exhibit A.  As detailed in the Second Supplemental Witt Decl., the search criteria used included "James Kleinert," "Moving Cloud Productions," and "Rob Shilaikis." *See e.g.* Second Supplemental Witt Decl. at ¶¶ 11, 12, 13, 14, and 15. Because an issue was raised at the motions' hearing concerning whether the correct spelling of Plaintiff's name was used, Mr. Witt explained in his Second Supplemental Declaration as follows:

In my Supplemental Declaration of May 6, 2015, (hereinafter "May 6 Declaration"), I referenced searches conducted using the name "James Kleinart." . . . .  This statement was in error. In preparing the May 6 Declaration, I had turned to the plaintiff's initial FOIA request of June 20, 2013, in which the plaintiff's surname had been misspelled, and, using that as a point of reference, typed in the misspelled name of "Kleinart" rather than the proper spelling of "Kleinert." The searches referenced in my May 6 Declaration were, however, conducted using the proper spelling of "Kleinert."  The BLM employees conducting the searches are familiar with both the plaintiff and the spelling of his surname and conducted their searches using the correct spelling. Moreover, the plaintiff's counsel had, subsequent to the June 20, 2013, FOIA request containing the misspelling, corrected the spelling of the plaintiff's surname. The misspelling appearing in the May 6

> Declaration simply reflects that I was looking at the [June] 20, 2013, FOIA request with the misspelling of the plaintiff's surname as I prepared my declaration; it does not reflect the spelling the BLM used in the searches referenced in the May 6 Declaration.

Witt Decl. at ¶ 4.  As detailed below, new searches for records were conducted in December 2015 in the BLM's headquarters located in Washington, D.C., ("WO"), and at the offices of the Colorado State Office of the BLM and the Montana/Dakotas State Office of the BLM. With respect to the WO, the BLM determined that three directorates were likely to maintain responsive records. These three directorates are:

1.   The BLM directorate known as "Resources and Planning, WO-200" ("200 Directorate"). Second Supplemental Witt Decl. at ¶ 7. The 200 Directorate oversees, inter alia, matters relating to wild horse and burro issues. This, therefore, is the directorate in which records relating to wild horses would be found.

2.   The BLM directorate known as "Communications, WO-600" ("600 Directorate"). *Id.* As its name implies, the 600 Directorate oversees matters relating to public affairs, legislative affairs, regulatory affairs, correspondence, and the news media.

and

3.   The BLM Washington-based directorate known as the Office of Law Enforcement and Security WO-120 ("120 Directorate"). The 120 Directorate contains the IMARS ("Incident, Management, Analysis, and Reporting System") files, which contain all of the BLM's law enforcement and investigation files. The investigative files for all BLM law enforcement matters, regardless of location, are maintained in IMARS. Second Supplemental Witt Decl. at ¶ 8.

The files maintained by these directorates are more fully explained in the attached Second Supplemental Witt Decl. at ¶¶ 7-8. Each of these directorate's files was searched in December 2015 for responsive records using the criteria as identified above. *See id.* at ¶¶ 11-13. In addition, the searches were also made in the Colorado and Montana/Dakota offices. *Id.* at ¶¶ 14-15. Although a good faith effort was made to find all extent records responsive to the FOIA request as modified, the BLM did not uncover any additional records beyond those the BLM had found as a result of prior searches. *Id.* at ¶ 16.

A search was also undertaken to uncover four records that are referenced in the Law Enforcement Investigative Report but had not been previously released to Plaintiff: two declarations, a trespass notice, and a "Categorical Exclusion document." As Mr. Witt explains in his Second Supplemental Declaration, three of these records were found prior to the December 2015 search: the two declarations and the trespass notice. The declarations were filed in another Federal law suit. One was Plaintiff's declaration; the other was the declaration of a Valori Armstrong, a BLM official. The inadvertent omission of these declarations from the earlier releases made by the BLM has now been explained by Mr. Witt, i.e., the omissions occurred because when the original law enforcement investigative file was electronically transferred to the FOIA Office, the file size caused the declarations to be dropped from the transmission. The BLM is now employing an internal file-hosting site to ensure that no attachments or files are dropped during a transmission between offices. *Id.* at ¶ 18. The two declarations are hereby provided to Plaintiff and are attached hereto as Exhibit D (referenced as Attachment D in the Second Supplemental Witt Decl.).

In addition to the two declarations, a 2009 "Notice of Trespass," which was missing from the earlier releases made by the BLM, was inadvertently omitted for the same reason. *Id.* at ¶ 19.

That notice is also hereby provided to Plaintiff and is attached to hereto as Exhibit E (referenced to as Attachment E in the Second Supplemental Witt Decl.).

One additional record referenced in the Law Enforcement Investigative Report but not made part of the earlier releases made by the BLM has not been found. This document is referenced as a 2007 "Categorical Exclusion document" related to a film permit issued to Plaintiff. *Id.* at ¶ 20. Although the BLM specifically searched for this notice as a result of the discussion at the motions' hearing, the file could not be located. *Id.*

After the search, the BLM determined to reprocess the records in light of the issues raised at the motions' hearing. As a result, it has limited its withholdings under FOIA Exemption 5 to portions of Pages 82, 159, 160 and 165 of Exhibit B, based on the attorney-client privilege. *See* Second Supplemental Witt Decl. at ¶¶ 25-31 and Exhibit B. These particular pages are not part of the Law Enforcement Investigative Report. *See id.* at ¶ 22. The BLM has also applied Exemption 6 to portions of Pages 91 and 92 of Exhibit B, which are also pages falling outside of the Law Enforcement Investigative Report. *See id.* at ¶¶ 22, 32-36 and Exhibit B.

With respect the Law Enforcement Investigative Report, the BLM is applying FOIA Exemption 7(C) to protect the names and identifying information of law enforcement officials appearing in therein. The redactions made pursuant to Exemption 7(C) appear on pages 1-2, 4, 9, 11, 13, and 15-17 of Exhibit B. *Id.* at ¶¶ 37-42. Redactions of the names law enforcement and identifying information of law enforcement officials pursuant to Exemption 7(C) also appear at pages 1-2, 4-5, 7-8, and 15-35 of Exhibit C. *Id.*

In addition, the BLM has also asserted Exemptions 6 and 7(C) to protect the names and personally identifying information of third parties mentioned in the Law Enforcement Investigative Report. Hence, the BLM has redacted the personal information of third party

individuals on pages 2-16, 20-24, 30-36, and 53-57 of Exhibit B pursuant to Exemptions 6 and 7(C). *Id.* at ¶¶ 37-43.

Pursuant to these same two FOIA exemptions, the BLM has also redacted personal information concerning third party individuals appearing at pages 1-5, 7-9, 14-17, 22, 26-27, and 34-40 of Exhibit C. *Id.* The BLM also continues to assert Exemptions 6 and 7(C) to protect the images of individuals appearing in six still photographs previously released to Plaintiff by letter of May 6, 2015. *Id.* at ¶ 23.

### III. <u>LEGAL STANDARD</u>

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248. A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must instead establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. Summary judgment is thus due if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [nonmovant]." *Id.*

Cases involving FOIA claims, like this one, are typically and appropriately decided on motions for summary judgment. *See, e.g.*, *Higgins v. U.S. Dep't of Justice*, 919 F. Supp. 2d 131, 139 (D.D.C. 2013); *Wheeler v. U.S. Dep't of Justice*, 403 F. Supp. 2d 1, 5–6 (D.D.C. 2005). To prevail on summary judgment in a typical FOIA action, an agency must satisfy two elements. First, it must demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army,* 920 F.2d 57, 68 (D.C. Cir. 1990). Summary judgment may be granted in a FOIA case upon agency affidavits that are relatively detailed, non-conclusory, and made in good faith. *See e.g., Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984); *see also McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Brown v. FBI*, 873 F.Supp.2d 388, 398 (D.D.C. 2012); *Russell v. FBI*, Civil Action No. 03-0611, 2004 WL 5574164, at *2 (D.D.C. Jan. 9, 2004) (*citing SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). Such agency affidavits attesting to a reasonable search "are afforded a presumption of good faith [and]. . . can be rebutted only with evidence that the agency's search was not made in good faith." *Defenders of Wildlife v. U.S. Dep't of Interior,* 314 F.Supp.2d 1, 8 (D.D.C. 2004); *see also SafeCard*, 926 F.2d at 1200 (quoting *Ground Saucer Watch v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (agency declarations are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents."'). However, "if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order." *Weisberg*, 627 F.2d at 370.

Second, an agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conf. on Rights v. Gonzales*, 404 F.Supp.2d 246, 252 (D.D.C. 2005). After asserting and explaining its exemptions, an agency must release "[a]ny reasonably

10

segregable portion of a record" and provide it to the requesting party, "after deletion of the portions which are exempt." 5 U.S.C. § 552(b). A *Vaughn* index "permit[s] adequate adversary testing of the agency's claimed right to an exemption." *NTEU v. Customs*, 802 F.2d 525, 527 (D.C. Cir. 1986) (*citing Mead Data Central v. U.S. Dep't of the Air Force*, 566, F.2d 242, 251 (D.C. Cir. 1977), and *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974)). Thus, the index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *NTEU*, 802 F.2d at 527 n.9. "The form of the *Vaughn* index is unimportant and affidavits providing similar information can suffice." *Spirko v. U.S. Postal Service*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) (*citing Gallant v. NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Thus, to avoid summary judgment, the plaintiff must state specific facts or present some objective evidence that would enable the Court to find he is entitled to relief. *Celotex Corp.*, 477 U.S. at 322-23.

Here, Defendant submits the Second Supplemental Declaration of Ryan Witt and other supporting documentation supporting the conclusions that the BLM has conducted a search likely to uncover all responsive records, has identified and described the documents responsive to Plaintiff's FOIA request that are exempt from disclosure under FOIA, and set forth the justification for the withholdings.

## IV. **ARGUMENT**

### A.     **Defendant Conducted an Adequate Search for Responsive Records**

An agency's search for records in the context of a FOIA case is adequate if it was "reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal quotation marks omitted); *see Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."). A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). A search is inadequate only if the agency fails to "show, with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents," *Oglesby*, 920 F.2d at 68. An agency may prove the adequacy of its search through a reasonably detailed declaration. *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).

Here, Defendant's search was reasonably calculated to uncover all documents in its files related to Plaintiff. The BLM identified the systems of records likely to contain responsive records, *i.e.*, the records maintained by three directorates within the BLM's Washington Office (the 120 Directorate, which is responsible for the BLM's IMARS records; the 200 Directorate, which oversees matters involving wild horses and burros; and the 600 Directorate, which oversees matters relating to public affairs, legislative affairs, regulatory affairs, correspondence, and the news media), plus the records maintained by the Colorado State Office of the BLM and the Montana/Dakotas State Office of the BLM. The specific locations searched and the search criteria are detailed in Mr. Witt's Second Supplemental Declaration. *See* Second Supplemental Witt Decl. at ¶¶ 5-15. To ensure that it had captured all responsive records, the BLM conducted a

new search in December 2015. However, although all locations likely to have responsive records were searched, no new documents were identified. In fact, prior to the December 2015 search, three of the four records specifically identified at the motions' hearing as not having been produced to Plaintiff, had been located by the BLM; they are now provided to Plaintiff. *See id.* at ¶¶ 18-19; *see also* Ex. D and Ex. E. The BLM conducted its December 2015 searches in good faith and in a manner reasonably calculated to uncover all relevant extant documents. Second Supplemental Witt Decl. at ¶¶ 5, 16.

Specifically, with regard to the records not included in the releases to Plaintiff prior to the motions' hearing, Mr. Witt explains that three of the four records were not provided because of the method for processing the emails and their attachments which has now been remedied.  Said explanation is accorded the presumption of good faith under the law. *See Citizens for Responsibility and Ethics in Washington v. Dep't of Justice*, 949 F. Supp. 2d 225, 230 (D.D.C. 2013) (*citing Safeguard Servs., Inc. v. Securities & Exchange Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).  With regard to the record that remains missing, this omission does not lead to the conclusion that the search was unreasonable.  Courts focus on the reasonableness of the search and not the results.  *See Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, et al.,* 844 F. Supp. 770, 776-77 n. 4 (D.D.C., 1993); *Oglesby v. U.S. Dept. of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). *Miller v. United States* Dep't of State, 779 F.2d 1378, 1383 (8th Cir. 1985); *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986).  As set forth in the Second Supplemental Declaration of Mr. Witt, good faith efforts have been made to search all files likely to contain responsive information.  The failure to provide one document does not negate these good faith efforts.

The records that were uncovered through these searches are referenced in the attached Second Supplemental Witt Declaration.  A description of the records being released as Exhibits D and E are set forth in paragraphs 17, 18, and 19 therein. These records have been released in full.

### B.    Defendant Properly Applied FOIA Exemptions 5, 6 and 7(C)

"Under FOIA, an agency is obligated to produce requested information unless it falls under one of the Act's nine exemptions." *Reliant Energy Power Generation Inc. v. Fed. Energy Regulatory Comm'n*, 520 F. Supp.2d 194, 200 (D.D.C. 2007) (*citing U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989)). The agency bears the burden of demonstrating that the documents it has withheld fall into one of the enumerated exemptions. 5 U.S.C. § 552(a)(4)(B); *see also Natural Res. Defense Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000). "While a Vaughn index is a common device used by agencies to meet this burden of proof, a court may award summary judgment on the basis of information provided by an agency in affidavits." *Reliant Energy*, 520 F. Supp.2d at 200 (*citing Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)). Such affidavits must ''describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and [may not be] controverted by either contrary evidence in the record nor by evidence of agency bad faith.'' *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981). If an agency fails to meet its burden through the submission of affidavits or a *Vaughn* index, the Court may order an *in camera* review of the withheld materials to determine whether the agency complied with its obligations under FOIA. *See, e.g., Taylor v. Dep't of Justice,* 257 F.Supp.2d 101, 114 (D.D.C. 2003) (*in camera* review

unnecessary when agency's declaration and *Vaughn* index provided court with information about nature of the withheld documents).

Here, the BLM properly applied FOIA Exemptions 5, 6 and 7(C) as follows:

### 1. **FOIA Exemption 5, Attorney-Client Privilege**

The attorney-client privilege is "the oldest of the privileges for confidential information known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The Supreme Court has long recognized that the attorney-client privilege merits special protection "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* Thus, "if a party demonstrates that attorney-client privilege applies, the privilege affords all communications between attorney and client absolute and complete protection from disclosure." *In re Allen*, 106 F.3d 582, 600 (4th Cir.1997). This privilege protects "not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390; *see also Schlefer v. United States*, 702 F.2d 233, 245 (D.C. Cir. 1983); *Brinton v. Dep't of State*, 636 F.2d 600, 605 (D.C. Cir. 1980). The attorney-client privilege covers attorney-client communications when the specifics of the communication are confidential, even though the underlying subject matter is known to third parties. *Upjohn Co. v. United States*, 449 U.S. at 395-96; *In re Amicillin Antitrust Litig.*, 81 F.R.D. 377, 388-90 (D.D.C. 1978).

In the instant case, the attorney-client privilege has been asserted to protect four pages of records: Pages 82, 159, 160, and 165 of Exhibit B.  Witt Decl. at ¶ 25.[3]

---

[3] The BLM has determined not to assert FOIA Exemption 5's deliberative process privilege as it previously did, and instead is asserting the attorney-client privilege to protect certain information as described below.

**Page 82 of Exhibit B** - With regard to the information appearing on page 82, as Mr. Witt describes:

> Exemption 5 has been asserted to protect a privileged attorney-client communication, sent at 5:56 PM on January 15, 2009, from Sheryl Rakestraw, an attorney at the U.S. Department of the Interior, to Sally Spencer, a BLM employee, concerning "James Kleinert's Latest Commercial Film Project on BLM in Disappointment Valley." In her email message, Ms. Rakestraw offers a legal opinion regarding Mr. Kleinert's use of documentary footage that the BLM believed to have been filmed without the benefit of a BLM permit. In the context of this particular email, the attorney-client privilege is appropriately asserted to protect a confidential communication between an attorney representing a client that has sought legal advice from a professional legal adviser in her capacity as a lawyer and a representative of the client.

Id. at ¶ 27.

Disclosure of this communication which is between an attorney and her client:

> would impede the full disclosure of all of the information that relates to the client's reasons for seeking legal advice, which is necessary if the professional mission is to be accomplished and thorough and sound legal advice is to be provided. Given that the client has not waived the attorney-client privilege in connection with this confidential email communication, the BLM determined that application of the attorney-client privilege to this communication is necessary and appropriate to promote candid exchanges between BLM attorneys and their clients.

*Id.* Accordingly, Exemption 5's attorney-client privilege was properly asserted to protect Page 82 of Exhibit B.

**Page 159 of Exhibit B** - With regard to the information appearing on 159, as Mr. Witt explains:

> Exemption 5 has been asserted to protect a privileged attorney-client email communication, sent at 8:17 AM on September 16, 2011, from Brett Grosko, a Department of Justice attorney, to Danielle DiMauro, an attorney at the U.S. Department of the Interior, concerning "Spring Creek Wild Horses - Denial of Public Access to Roundup." These two lawyers represented the BLM, and the communication from Mr. Grosko to Ms. DiMauro concerned Mr. Grosko's opinion regarding certain parameters the BLM should be aware of in the course of a wild horse gathering. In the context of this particular email, the attorney-client privilege is appropriately asserted to protect confidential communications between attorneys representing a client that has sought legal advice from a professional legal adviser in his/her capacity as a lawyer.

16

Id. at ¶ 28.  For the same reasons set forth above, disclosure of the confidential communication between the two BLM attorneys would reveal attorney-client confidential information. *Id.*

**Page 160 of Exhibit B** - With regard to the information appearing on Page 160, Mr. Witt explains that

> Exemption 5 has been asserted to protect a privileged attorney-client email communication, sent at 6:58 AM on September 16, 2011, from Brett Grosko, a Department of Justice attorney, to Danielle DiMauro, an attorney at the U.S. Department of the Interior, and Francis G. Ackley, a BLM employee working with the wild horse and burro program in Colorado, concerning "Spring Creek Wild Horses - Denial of Public Access to Roundup." . . . .  The communication from Mr. Grosko to Ms. DiMauro and Mr. Ackley concerned a legal brief Mr. Grosko was drafting in connection with a wild horse gathering by the BLM. In the context of this particular email, the attorney-client privilege is appropriately asserted to protect confidential communications between attorneys representing a client that has sought legal advice from a professional legal adviser in his/her capacity as a lawyer and a representative of the client.

*Id.* at ¶ 29.  Disclosure of the communication between the two BLM attorneys and the BLM's Mr. Ackley would impede the full disclosure of all of the information that relates to the client's reasons for seeking legal advice, which is necessary if the professional mission is to be accomplished and thorough and sound legal advice is to be provided. *Id.*

**Page 165 of Exhibit B** - Page 165 contains a copy of both the aforementioned 8:17 AM email of September 16, 2011, from Mr. Grosko to Ms. DiMauro, and the aforementioned 6:58 AM email of September 16, 2011, from Mr. Grosko to Ms. DiMauro and Mr. Ackley. For the reasons set forth above and in Paragraphs 28 and 29 of the Second Supplemental Witt Decl., the BLM asserts that Exemption 5's attorney-client privilege protects this information from disclosure. *Id.* at ¶ 30.

### 2.  Exemption 6 – Personal Privacy in Non-Law Enforcement Files

FOIA Exemption 6 provides for the withholding of matters contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. §552(b)(6). The primary purpose of Exemption 6's

enactment was "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982). The Supreme Court has adopted a broad construction of the privacy interests protected by this exemption, has rejected a "cramped notion of personal privacy[,]" and has emphasized that "privacy encompass[es] the individual's control of information concerning his or her person." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989).

The review of an agency's withholding under Exemption 6 proceeds in two stages: first, the Court must decide whether the information is subject to protection under the exemption; and second, the Court must determine whether disclosure would constitute a "clearly unwarranted invasion of personal privacy." *Washington Post Co. v. Dep't of Health and Human Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982). With respect to the first stage, the threshold for the application of Exemption 6 is "minimal." *Id.* As previously indicated, Exemption 6 provides for the withholding of matters contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual." *Lepelletier v.  Fed. Deposit Ins. Corp.*, 164 F.3d 37, 46 (D.C. Cir. 1999) (*quoting Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 ("The term 'similar files' is not "limited to files containing 'intimate details' and 'highly personal' information," and is, instead, intended by Congress "to have a broad, rather than a narrow, meaning.")). The Court also has emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person." *Reporters Comm. for Freedom of the Press*, 489 U.S. at 763. The Supreme Court has

found that "[i]ncorporated in the 'clearly unwarranted' language is the requirement for . . . [a] 'balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information.'" *Lepelletier*, 164 F.3d at 46 (*citing Dep't of Defense v. Fed. Labor Relations Auth.*, 964 F.2d 26, 29 (D.C. Cir. 1992) (citations omitted)). In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA: "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Id.*; *see also Reporters Comm. for Freedom of the Press*, 489 U.S. at 773.

Here, the BLM asserted Exemption 6 to protect information in the non-Law Enforcement Investigative Report records appearing in emails at Pages 91 and 92 of Exhibit B. This information concerns a former BLM employee's job performance. As Mr. Witt explains:

> The email appearing on page 91 is from 9:48 AM on October 6, 2008, and was addressed to Henri R. Bisson of the BLM by Don Glenn of the BLM. The BLM has redacted one word from page 91. The second email, appearing on page 92, is from 11:05 AM on October 3, 2008, and is from Curtis Warrick of BLM to Art DiGrazia of the BLM. The BLM has redacted nine sentences, spread out over six paragraphs, from page 92.

Second Supplemental Witt Decl. at ¶ 34. The BLM found that information concerning a former employee's job performance fell within the scope of Exemption 6. *Id.* After balancing the privacy interest that would be affected by disclosure against any public information in the information, the BLM determined that the release of the redacted information on pages 91 and 92 would constitute a clearly unwarranted invasion of personal privacy for the particular individual.

**3.** **Exemption 7 – Personal Privacy of Third Parties in Law Enforcement Files**

The BLM withheld personal information in the records provided to Plaintiff pursuant to Exemption 7(C), in combination with Exemption 6 because its disclosure would result in an unwarranted invasion of personal privacy.

Federal agencies must meet the threshold requirement of Exemption 7 before they may withhold requested documents on the basis of any of its subparts. *Pratt v. Webster,* 673 F.2d 408, 416 (D.C. Cir. 1982). That threshold requires the records or information to be "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). "In assessing whether records are compiled for law enforcement purposes . . . the focus is on how and under what circumstances the requested files were compiled, . . . and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Banks v. U.S. Dep't of Justice*, 538 F. Supp.2d 228, 239 (D.D.C. 2008) (citing *Jefferson v. U.S. Dep't of Justice*, 284 F.3d 172-176-77 (D.C. Cir. 2002)). To demonstrate that records were compiled for a law enforcement purpose, there must be a nexus between the agency's activity . . . and its law enforcement duties" which is "based on information sufficient to support at least a colorable claim of rationality.'" *Keys*, 830 F.2d 337, 340 (D.C. Cir. 1987). If the investigation is for a possible violation of law, then the inquiry is for law enforcement purposes. *Id.*; *see also Thomas v. U.S. Dep't of Justice*, 531 F. Supp.2d 102, 107 (D.D.C. 2008) (finding records pertaining to investigation and prosecution of assault and kidnapping satisfy law enforcement threshold).

Exemption 7(C) concerns the privacy interests of third parties and requires the Court to balance such privacy interests against the public interest in disclosure of the records.  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773-75 (1989). The exemption

protects from mandatory disclosure records compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether this exemption applies to particular material, the Court must balance in privacy of individuals mentioned in the records against the public interest in disclosure. *See, e.g., Reporters Comm.*, 489 U.S. at 776-780; *Lewis-Bey*, 595 F. Supp. 2d at 134 (*citing Beck v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992)).

Once it has determined that that the Government has properly asserted a privacy interest under Exemption 7(C), the Court must balance the privacy interest of the individual mentioned in the record against the public's interest in disclosure. *Favish*, 541 U.S. at 172; *Lewis-Bey*, 595 F. Supp.2d at 134. "In order to trigger the balancing of public interests against private interests, a FOIA requestor must (1) 'show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) 'show the information is likely to advance that interest." *Boyd v. Criminal Division of U.S. Dep't of Justice*, 475 F.3d 381, 387 (D.C. Cir. 2007) (*citing Favish*, 541 U.S. at 172). If the public interest cited by a requestor in attempting to overcome the privacy exemption is official misconduct, then the requestor must "produce evidence that would warrant a belief by a reasonable person that the alleged government impropriety might have occurred." *Id.* at 387 (*citing Favish*, 541 U.S. at 172).

The only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis*, 968 F.2d at 1282 (quoting *Reporters Comm.*, 489 U.S. at 773). Details that "reveal little or nothing about an agency's own conduct" are not part of the public interest for purposes of Exemption 7(C). *Blanton v. U.S. Dep't of Justice*, 63 F.Supp.2d 35, 41 (D.D.C. 1999) (quoting *Davis*, 968 F.2d at

1282); *cf. SafeCard Services,* 926 F.2d at 1206 (D.C. Cir. 1991) (public interest in disclosure of

third party identities is "insubstantial"). In the absence of any evidence that the government

agency has engaged in illegal activity, information that interferes with a third party's privacy is

exempt from disclosure. *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 999 (D.C. Cir. 1998); *Voinche

v. FBI*, 46 F. Supp.2d 26, 33 (D.D.C. 1999).

      Here, as Mr. Witt explains, Exemption 7(C) has been asserted to protect names and

identifying information of law enforcement officials appearing in the Law Enforcement

Investigative Report. Specifically, Exemption 7(C) has been asserted to protect the names of

those law enforcement officials appearing in the Law Enforcement Investigative Report who

either (a) conducted an investigation into whether Mr. Kleinert engaged in commercial filming

without the benefit of a BLM permit, or (b) supervised those who conducted the investigation.

Witt Decl. at ¶ 42.  The BLM has taken this position because these law enforcement officials

have a privacy interest in their identities. As Mr. Witt explains:

> The public release of their names through the FOIA process could reasonably be
> expected to subject them to (a) harassment in the conduct of their official duties, and (b)
> harassment and infringement in the course of their private lives. The BLM's management
> of wild horses in the Western United States stirs passion given the tension between the
> beauty and symbolism of roaming wild horses and the delicate ecosystem of the West,
> where these horses must forage. Emotions run high on the topic of wild horses, and,
> given this, the BLM has continued to redact the officials' names under Exemption 7(C) in
> the belief that the potential for harassment is genuine in this context. Moreover, revealing
> the names of the law enforcement officials through the FOIA would not shed light on the
> activities of the agency, as their names would not have a bearing on the BLM's
> performance of its mission to protect and defend public lands and resources committed to
> its stewardship. Because the BLM found the harm to personal privacy to be greater than
> whatever public interest may be served by disclosure, the BLM determined that the
> release of the information concerning the names of the law enforcement officials would
> reasonably constitute an unwarranted invasion of the privacy of these individuals and is,
> therefore, withholding the information under Exemption 7(C).

*Id.* These Exemption 7(C) redactions occur on pages 1-2, 4, 9, 11, 13, and 15-17 of Exhibit B. *Id.*

The BLM has also asserted Exemption 6 and Exemption 7(C) to protect the personal information of private, third-party individuals identified in the Law Enforcement Investigative Report, (e.g., name, address, phone numbers, profession, marital status, partial Social Security Number, date of birth, height, weight, eye color, hair color), including the name of Mr. Kleinert's attorney at the time. The BLM took this action because information concerning private citizens appearing in law enforcement records is categorically exempt from disclosure except where necessary to confirm or refute compelling evidence that the agency is engaged in illegal activity. Second Supplemental Witt Decl. at ¶ 43. As Mr. Witt notes:

> As I understand matters, the U.S. Court of Appeals for the District of Columbia has found the categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate under Exemption 7(C). In this instance, the BLM found the private individuals identified in the Law Enforcement Investigative Report to have a privacy interest in their personal information, and there is no argument that the release of their personal information is necessary to confirm or refute compelling evidence that the BLM has engaged in illegal activity.

*Id.* Hence, the BLM has redacted the personal information of third party individuals appearing on pages 2-16, 20-24, 30-36, and 53-57 of Exhibit B. The BLM likewise redacted personal information concerning third party individuals appearing at pages 1-5, 7-9, 14-17, 22, 26-27, and 34-40 of Exhibit C.

Therefore, Defendant is properly withholding the records described above under Exemptions 7(C), as well as Exemption 6. The BLM is also properly withholding, pursuant to Exemptions 6 and 7(C), portions of the six still photographs referenced in the Supplemental *Vaughn* Index. *See* Supplemental *Vaughn* Index at 3; see also Second Supplemental Witt Decl. at ¶ 23. In each instance, the BLM applied the redactions to preclude individuals whose images

appeared in the Law Enforcement Investigative Report from being identified by having their images made public through the processing of Plaintiff's modified FOIA request, given that, under the FOIA, a release to one is a release to all. *See id.* (identifying the photographs as part of the Law Enforcement Investigative Report); *see also* Supplemental *Vaughn* Index at 3 (describing the redactions made to the photographs; in one instance a photograph was cropped to preclude an individual from being identified, while the other redactions were achieved by the obscuring of the heads of individuals appearing in the photographs). The individuals whose images appear in the photographs in the Law Enforcement Investigative Report have a privacy interest in their identities, and information concerning private citizens, such as those who chose to attend the photographed wild horse roundup, is categorically exempt from disclosure except where necessary to confirm or refute compelling evidence that the agency is engaged in illegal activity. There is no such compelling evidence here, making the BLM's redaction of these individuals' images appropriate under the FOIA.

### 4. Defendant Satisfied Its Segregation Obligations Under the FOIA

The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Segregability should not be determined based upon an evaluation of whether nonexempt portions of documents would be helpful to the requestor if segregated and released. *See Stolt-Nielsen Transp. Group, Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008) (rejecting agency's assertion that "the redacted documents without names and dates would provide no meaningful information," and declaring that information need not be "helpful to the requestee [to require that the government must disclose it"); *see also Mead Data Content v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 n.55 (D.C. Cir. 1977) (stating that while "information content" is a legitimate consideration, it "does not mean that a court should approve an agency

withholding because of the court's low estimate of the value to the requestor of the information withheld"). At the same time, when nonexempt information is "inextricably intertwined with exempt information, reasonable segregation is not possible." *Mead Data Content*, 566 F.2d at 260. Moreover, an agency need not produce any material from records where "the excision of exempt information would . . . produce an edited document with little informational value." *Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1327 (D.C. Cir. 2000) (citation omitted).

As explained in the Secondary Supplemental Witt Declaration, he personally reviewed each of the documents to determine segregability. Second Supplemental Witt Decl. at ¶¶ 23, 25, 33, 36, 42, 43, 44. As is evidenced by Mr. Witt's explanations of the withheld information and a review of the attached records, the BLM has satisfied their segregation obligations under the statute.

## CONCLUSION

For the reasons set forth above and in the supporting documents, Defendant's Motion for Summary Judgment should be granted.

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar #415793
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar # 924092
Chief, Civil Division

By: _____/s/_____
CLAIRE WHITAKER
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
Telephone: (202) 252-2526

OF COUNSEL:

MARIA LURIE
Attorney-Advisor
Office of the Solicitor
U.S. Department of the Interior